**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VALENTINA PICHUGIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-4375 |
| | ) | Judge Sharon Johnson Coleman |
| EXPERIAN INFORMATION | ) | Magistrate Judge Nan R. Nolan |
| SOLUTIONS, INC; and | ) | |
| WELLS FARGO BANK, N.A., d/b/a/ | ) | |
| WELLS FARGO HOME MORTGAGE | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.      Plaintiff Valentina Pichugin brings this action to secure redress from

unlawful credit reporting practices of defendants Experian Information Solutions, INC.

("Experian"), and Wells Fargo Bank, N.A. ("Wells Fargo"), in violation of the Fair Credit

Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA").

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331

(general federal question), 1337 (interstate commerce) and 15 U.S.C. §1681p (FCRA).

3.      Venue in this District is proper because each defendant is subject to

jurisdiction here.

1

## PARTIES

4.      Plaintiff Valentina Pichugin is an individual who resides in Highland Park, Illinois.

5.      Defendant Experian is a credit reporting agency that does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Chicago, IL 60604.

6.      Defendant Wells Fargo Bank, N.A., d/b/a Wells Fargo Home Mortgage, is a corporation which does business in Illinois.  Its registered agent is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL.

## FACTS

7.      In June 2003, plaintiff bought a condominium.

8.      The purchase was financed by two Wells Fargo mortgages: mortgage-first (account #002346...) and mortgage-junior (account # 654847...).

9.      Plaintiff made all payments as scheduled on both of these Wells Fargo accounts until she paid them off in full.

10.      On April 21, 2004, plaintiff filed for Chapter 13 Bankruptcy.

11.      Despite this bankruptcy, plaintiff was current on her mortgage payments throughout the entire Chapter 13 process, and a Chapter 13 Trustee did not pay her mortgage. A copy of plaintiff's Chapter 13 financial summary with the list of scheduled debt and claims is attached as Appendix A.

12.      Plaintiff completed her Chapter 13 plan and received a Discharge of Chapter 13 on September 5, 2008.

13. Plaintiff continued paying off both of her Wells Fargo accounts as scheduled after the discharge of the Chapter 13.

14. Plaintiff paid off her mortgage-junior account (654847.....) in October of 2009, and she received a Satisfaction of Real Estate Mortgage by bank from Wells Fargo for this loan in January of 2010 (Appendix B).

15. Plaintiff paid off her mortgage-senior account (002346...) on June 21, 2010.

16. Upon requesting copies of her credit report from Experian, Equifax, and TransUnion in April of 2010, plaintiff noticed there were multiple erroneous notations in her reports related to these Wells Fargo accounts.

17. Specifically, the Experian report indicated the following for the status of the mortgage: "discharged through Bankruptcy Chapter 13," and for account history: "Debt included in Chapter 13."

18. Plaintiffs' mortgage loans were not discharged in her Chapter 13. Plaintiff paid both mortgages, which were not delinquent, outside of her Chapter 13 plan, and then she paid them both off completely.

19. Between April of 2010 and the end of June 2010, plaintiff disputed the erroneous information with the credit bureaus. Every time she did so, the credit bureaus contacted Wells Fargo regarding her disputes and requested that Wells Fargo check its records to verify all of the information regarding the disputed item and to report back. Most mistakes at the time were corrected, but information about both of plaintiff's accounts with Wells Fargo remained incorrect.

20.     Experian's June 29, 2010 report, once again indicated that the status of Plaintiff's mortgage-junior account (654847...) was "Discharged through Bankruptcy Chapter 13, and that "Debt included in Chapter 13 bankruptcy on December 31, 2009. This account is scheduled to continue on record until September 2015...This item was verified and updated in June 2010." (Appendix C).

21.     Plaintiff did not file any Chapter 13 bankruptcy in December, 2009.  In fact, her Chapter 13 bankruptcy was completed on September 5, 2008.

22.     Plaintiff's mortgage-senior account (002346...) also noted that the status of the mortgage was "Discharged through Bankruptcy Chapter 13, and also that "Debt included in Chapter 13 Bankruptcy on April 21, 2004. This account is scheduled to continue on record until April 2011." (Appendix C).

23.     On information and belief, every time plaintiff submitted a dispute to Experian, Experian contacted Wells Fargo regarding the dispute and requested that Wells Fargo check its records to verify all of the information regarding the disputed item and to report back within 30 days of the date that it received Experian's request.   Wells Fargo verified this information to Experian on several occasions in response to Experian's requests.  A letter dated June 4, 2010 from Wells Fargo regarding mortgage-junior account (654847...) attached as Appendix D indicates that Wells Fargo verified that the disputed account was discharged in bankruptcy.

24.     On or around December 28, 2010, after viewing a credit report that plaintiff believed had been corrected, plaintiff noticed that the previously-deleted bankruptcy notation regarding partial account number 654847... had reappeared in her credit.

4

25.     On December 28, 2010, plaintiff sent the letter attached as Appendix E to Experian and Wells Fargo.   Plaintiff's letter noted that Experian was listing the loan as discharged through bankruptcy, but that "The loan was not discharged and it was not included in Chapter 13; it was paid outside the bankruptcy plan."  Plaintiff included supporting documents with her letter.

26.     Upon receiving Appendix E, Experian contacted Wells Fargo regarding plaintiff's dispute and requested that Wells Fargo check its records to verify all of the information regarding the disputed item and to report back within 30 days of the date that it received Experian's request.

27.     On January 12, 2011, Wells Fargo  responded to Experian's request by verifying the notations on the account. See Appendix F.  Appendix F notes that "The account was not reaffirmed and was discharged in bankruptcy.  The status of the account is paid and closed."  As noted above, Wells Fargo's assertion that the loan was discharged in bankruptcy was false.  In addition, Wells Fargo continued to report the status of the loan as "Discharged through Chapter 13 bankruptcy."

28.     On January 13, 2011, Experian sent plaintiff a credit report that included the incorrect bankruptcy notations for plaintiff's mortgage-junior account (654847...).  See Appendix G.  Specifically, App. G lists the status of the loan as "Discharged through Chapter 13," and the account history as: "Debt included in Chapter 13 Bankruptcy on Oct 16, 2009."

29.     Plaintiff did not file any Chapter 13 bankruptcy in October, 2009.  In fact, her Chapter 13 bankruptcy was completed in September, 2008, and she paid off the junior mortgage in October, 2009.

30.     This same January 13, 2011 credit report from Experian correctly lists plaintiff's mortgage-senior account (002346...) without the bankruptcy notations.

31.     On February 1, 2011, plaintiff received the letter attached as <u>Appendix H</u> from Wells Fargo.

32.     Plaintiff has been damaged by the false reporting. Plaintiff lost the contract on a different home that she was planning to buy. Because plaintiff sold the condominium property these loans served, and since she was unable to obtain a mortgage to finance the purchase of a new home, she has been forced to rent a place to live. Plaintiff's credit has also been severely damaged by the actions of Experian and Wells Fargo. Plaintiff has also expended extensive time and effort dealing with the false reporting.

<u>**COUNT I – FCRA CLAIM AGAINST EXPERIAN**</u>

33.     Plaintiff incorporates ¶¶1-32.  This claim is against Experian.

34.     Under the Fair Credit Reporting Act, 15 U.S.C. §1681i, Experian is required to conduct a reasonable investigation if a consumer such as plaintiff disputes the accuracy of an item on her credit report.  Section 1681i provides:

**§1681i.  Procedure in case of disputed accuracy**

**(a) Reinvestigations of disputed information.**

**(1) Reinvestigation required.**

**(A) In general. If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.**

6

**(B) Extension of period to reinvestigate. Except as provided in subparagraph (C), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.**

**(C) Limitations on extension of period to reinvestigate. Subparagraph (B)shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be inaccurate or incomplete or the consumer reporting agency determines that the information cannot be verified.**

**(2) Prompt notice of dispute to furnisher of information.**

**(A) In general. Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.**

**(B) Provision of other information from consumer. The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A). . . .**

**(4) Consideration of consumer information. In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.**

**(5) Treatment of inaccurate or unverifiable information.**

**(A) In general. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of**

**information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. . . .**

35.     Experian willfully or negligently (a) failed to take reasonable measures to investigate plaintiff's dispute and (b) failed to correct plaintiff's credit report.

36.     Experian violated 15 U.S.C. §1681n and/or §1681o.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against Experian for:

(1)     Appropriate actual, punitive and statutory damages;

(2)     Attorney's fees, litigation expenses and costs of suit;

(3)     Such other or further relief as the Court deems proper.

## COUNT II – FCRA CLAIM AGAINST WELLS FARGO

37.     Plaintiff incorporates ¶¶1-32.  This claim is against Wells Fargo.

38.     Wells Fargo violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), by failing to reasonably investigate when Experian contacted Wells Fargo in response to plaintiff's complaints and in providing false information as a result.

39.     Wells Fargo repeatedly reported and verified that plaintiff's mortgages were "discharged" in a Chapter 13 bankruptcy, when they were in fact paid off, and Wells Fargo repeatedly reported that plaintiff's mortgages were included in Chapter 13 bankruptcies filed on various dates, when plaintiff's mortgages were not included in her Chapter 13, and when her Chapter 13 was filed on a date 4-5 years earlier than the dates reported by Wells Fargo.

40.     Wells Fargo continued to report and verify the false information, even after plaintiff provided it with documents which demonstrated the falsity of its reporting, and

even after it admitted that her loan was in fact "paid and closed."

41.     Section 1681s-2(b) provides:

**(b) Duties of furnishers of information upon notice of dispute.**

> **(1) In general. After receiving notice pursuant to section 611(a)(2) [15 USC §1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall**

>> **(A) conduct an investigation with respect to the disputed information;**

>> **(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USC §1681i(a)(2)];**

>> **(C) report the results of the investigation to the consumer reporting agency; and**

>> **(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.**

> **(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USC §1681i(a)(1)] within which the consumer reporting agency is required to complete actions required by that section regarding that information.**

42.     Wells Fargo committed such violations willfully or negligently, thereby

violating 15 U.S.C. §1681n and/or §1681o.

43.     Section 1681n provides:

**§1681n.  Civil liability for willful noncompliance**

**(a) In general.  Any person who willfully fails to comply with any requirement imposed under this title  with respect to any consumer is liable**

to that consumer in an amount equal to the sum of–

(1)

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or**

**(2) such amount of punitive damages as the court may allow; and**

**(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .**

44.     Section 1681o provides:

**§1681o.  Civil liability for negligent noncompliance**

**(a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this title  with respect to any consumer is liable to that consumer in an amount equal to the sum of--**

**(1) any actual damages sustained by the consumer as a result of the failure;**

**(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.**

45.     Section 1681p provides:

**§1681p.  Jurisdiction of courts; limitation of actions**

**An action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of–**
  **(1) 2 years after the date of discovery by the plaintiff of the violation that is liability; or**
  **(2) 5 years after the date on which the violation that is the basis for such liability occurs.**

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and

against Wells Fargo for:

        (1)      Appropriate actual, punitive and statutory damages;

        (2)      Attorney's fees, litigation expenses and costs of suit;

        (3)      Such other or further relief as the Court deems proper.


      /s/ Daniel A. Edelman    
      Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


**<u>JURY DEMAND</u>**


    Plaintiff demands trial by jury.


      /s/ Daniel A. Edelman    
      Daniel A. Edelman

11

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


/s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on March 27, 2012, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to the following:

Simon A. Fleischmann
sfleischmann@lockelord.com
Thomas Hackney
thackney@jonesday.com
Shereefat O. Balogun
sbalogun@lockelord.com

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

13

<u>APPENDIX A</u>

Case 04-15665    Doc 4    Filed 04/21/04    Entered 04/22/04 15:50:58    Desc Main
Document    Page 1 of 5

E O D    APR 2 2 2004

Model Plan
Rev.02/03/04

Trustee:  ___ Marshall    ___ Meyer
          ___ Stearns     ___ Vaughn

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

In re:                              ) Case No. 04 B 15665
                                    )
Pichugin, Valentina,                )☒ Original Chapter 13 Plan
                                    )
Debtors.                            )☐ Modified Chapter 13 Plan, dated _____

☒ A check in this box indicates that the plan contains special provisions, set out in Section G. Otherwise, the plan includes no provisions deviating from the model plan adopted by the court at the time of the filing of this case.

**A. Budget items**

1. As stated in the debtor's Schedule I and J , (a) the number of persons in the debtor's household is _____ ; (b) their ages are ▓▓▓▓▓ ; (c) total household monthly income is $▓▓▓▓ ; and (d) total monthly household expenses are $ 2,714.86 leaving monthly disposable income of $▓▓▓▓ .

2. The debtor's Schedule J includes $ _____ for charitable contributions; the debtor represents that the debtor made substantially similar contributions for _____ months prior to filing this case.

**B. General provisions**

1. The debtor assumes all unexpired leases and executory contracts identified in the debtor's Schedule G.

2. The rights of holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in Paragraph 4 of Section E of this plan, shall be modified only to the extent that (a) paying the amounts specified in that paragraph, while making all required postpetition principal, interest and escrow payments, shall result in full reinstatement of the mortgage according to its original terms, extinguishing any right of the mortgage holder to recover any amount alleged to have arisen prior to or during the pendency of the case, other than costs of collection, and (b) all costs of collection, including attorneys' fees, that arise during the pendency of this case may only be claimed by the mortgagee pursuant to the provisions of Paragraph 10 of Section E of this plan, and if not so claimed, are waived upon completion of this plan and may not be asserted thereafter.

3. The holder of any claim secured by property of the estate, other than a mortgage treated in Section C or in Paragraph 3 of Section E, shall retain the lien

☐ until receipt of all payments provided for by this plan on account of the claim, including payments on account of any unsecured portion of the claim, /or/

☐ until receipt of all payments provided for by this plan on account of the portion of the claim that is a secured claim under 11 U.S.C. § 506(a),

at which time the lien shall terminate and be released by the creditor.

4. Within 14 days of a request by the trustee, the debtor shall provide (a) copies of any tax returns filed during the pendency of this case, and (b) a copy of the debtor's current wage statement.

5. The debtor shall retain records, including all receipts, of all charitable donations listed in Schedule J.

**C. Direct payment of claims by debtor**

☐ The debtor will make no direct payments to creditors holding prepetition claims. /or/
☒ The debtor will make current monthly payments, as listed in the debtor's Schedule J—increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements, collection costs, or similar matters—directly to the following creditors holding claims secured by a mortgage on the debtor's real property:

Creditor: Wells Fargo _____, monthly payment, $ 754.04 ;
Creditor: Wells Fargo _____, monthly payment, $ 100.67 .

*If this box is ☐ checked, additional direct mortgage payments are listed on the overflow page.*

FILED
APR 21 2004
KENNETH S. GARDNER
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

**D.**
**Payments**
**by debtor**
**to the**
**trustee**

1. *Initial plan term.* The debtor will pay to the trustee $ _670_ monthly for _60_ months [and $ _—_ monthly for an additional _—_ months], for total payments, during the initial plan term, of $ _40,193.45_ *[Enter this amount on Line 1 of Section H.]*

2. *Adjustments to initial term.* (a) If the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments. (b) The plan will conclude, prior to the end of the initial term, at such time as all allowed claims are paid in full, with any interest required by the plan.

**E.**
**Disburse-**
**ments by**
**the**
**trustee**

The trustee shall disburse payments received from the debtor under this plan as follows:

1. *Trustee's fees.* Payable monthly, as authorized; estimated at _8_ % of plan payments; and during the initial plan term, totaling $ _2971.27_ *[Enter this amount on Line 2a of Section H.]*

2. *Priority claims of debtor's attorney.* Payable in amounts allowed by court order, in installments. Installment payments shall be made as follows, up to the allowed amount, unless lower installment payments are ordered by the court: an initial installment of one-half of the funds held by the trustee at the time the trustee receives the order allowing fees (not including amounts for current mortgage payments) and subsequent monthly installments of one-half of the regular monthly payment of the debtor (not including current mortgage payments). The total claim of debtor's attorney is estimated to be $ _1105_ .*[Enter this amount on Line 2b of Section H.]*

3. *Current mortgage payments.* Payable according to the terms of the mortgage, as set forth below, beginning with the first payment due after the filing of the case. Each of these payments shall be increased or decreased by the trustee as necessary to reflect changes in variable interest rates, escrow requirements, or similar matters; the trustee shall make the change in payments as soon as practicable after receipt of a notice of the change issued by the mortgage holder, but no later than 14 days after such receipt. The trustee shall notify the debtor of any such change at least 7 days before putting the change into effect.

(a) To creditor _N/A_ , monthly payments of $ _____ .
These payments, over the term of the plan, are estimated to total $ _____ .

(b) To creditor _N/A_ , monthly payments of $ _____ .
These payments, over the term of the plan, are estimated to total $ _____ .

*If this box □ is checked, additional current mortgage payments are listed on the overflow page.*
The total of all current mortgage payments to be made by the trustee under the plan is estimated to be $ _N/A_ . *[Enter this amount on Line 2c of Section H.]*

4. *Mortgage arrears.* Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of a reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(a) To creditor _N/A_ , arrears of $ _____ , payable monthly
□pro rata with payments on secured claims /or/ □ in fixed installments of $ _____ ;
and payable □ without interest /or/ □ with interest at an annual percentage rate of _____ %.
These arrearage payments, over the term of the plan, are estimated to total $ _____ .

(b) To creditor _N/A_ , arrears of $ _____ , payable monthly

2

□pro rata with payments on secured claims /or/ □ in fixed installments of $ _____;
and payable □  without interest /or/ □  with interest at an annual percentage rate of _____%.
These arrearage payments, over the term of the plan, are estimated to total $_____.

*If this box □ is checked, additional direct arrearage payments are listed on the overflow page.*
The total of all mortgage arrearage payments to be made by the trustee under the plan is estimated
to be $_____*0*_____. *[Enter this amount on Line 2d of Section H.]*

5. *Other secured claims.* All secured claims, other than mortgage claims treated above, are to be paid in full during the plan term, with interest at an annual percentage rate specified below in the amounts stated (subject to reduction either with the consent of the creditor or by court order, implemented as for reductions of mortgage arrears), regardless of contrary proofs of claim, in monthly installments, pro rata, but with fixed monthly payments if so specified (by a check mark and payment amount):

(a) Creditor: __*NISSAN*_____ Collateral: __*2004 NISSAN Sentra*_____
Amount of secured claim: $ __*17,000*__ APR __*10.8*__ % □ Fixed monthly payment: $_____;
Total estimated payments, including interest, on the claim: $ __*22,111.16*__.

(b) Creditor: __*N/A*_____ Collateral: _____
Amount of secured claim: $_____ APR ____% □ Fixed monthly payment: $_____;
Total estimated payments, including interest, on the claim: $ __*0*__.

*If this box □ is checked, additional secured claims are listed on the overflow page. [All claims in the debtor's Schedule D, other than mortgages treated above, must be listed in this paragraph.]*

The total of all payments on these secured claims, including interest, is estimated to be $ __*22,111.16*__
*[Enter this amount on Line 2e of Section H.]*

6. *Allowed priority claims other than those of the debtor's attorney.* Payable in full, without interest, on a pro rata basis. The total of all payments on non-attorney priority claims to be made by the trustee under the plan is estimated to be $ __*−0−*__. *[Enter this amount on Line 2f of Section H.]*

7. *Specially classified unsecured claim.* A special class consisting of the following non-priority unsecured claim: __*N/A*__ shall be paid at _____%
of the allowed amount. The total of all payments to this special class is estimated to be $_____*0*_____.
*[Enter this amount on Line 2g of Section H.]*

Reason for the special class:_____.

8. *General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially classified, including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro rata, □ in full, /or/ ☒ to the extent possible from the payments set out in Section D, but not less than *27.5* % of their allowed amount. *[Enter minimum payment percentage on Line 4b of Section H.]*

9. *Interest.* Interest ☒ shall not be paid on unsecured claims /or / interest □  shall be paid on unsecured claims, including priority and specially classified claims, at an annual percentage rate of __*0*__%. *[Complete Line 4d of Section H to reflect interest payable.]*

10. *Costs of Collection.* For all claims treated under Paragraphs 3, 4, and 5 of this section, costs of collection, including attorneys fees, arising during the pendency of this case, may only be collected by the creditor through the following procedure, unless otherwise ordered by the court: (a) the costs must be itemized in a notice, served within 90 days of the time the costs arose, on the trustee, the debtor, and the debtor's attorney; (b) unless subject to an objection filed within 14 days after notice of the costs of collection is given, the costs

will be deemed allowed and approved as reasonable by the court; (c) the trustee shall commence making payments of the costs to the creditor, in the manner set forth below; (d) in the absence of objection, payments of the costs of collection shall be made with the regular monthly plan disbursements, commencing with the first disbursement taking place at least 21 days after notice of costs is given; (e).payments shall be in equal monthly amounts pro rated over the months remaining in the plan, unless the debtor agrees to larger monthly payments; (f) any party objecting to the payment of costs of collection must file and serve on the trustee, debtor's attorney and the creditor seeking payment, a written objection with a notice setting a hearing before the court within 14 days of filing; (g) upon receipt of objection, the trustee shall make no payment of the costs of collection until the objection is resolved by the court and shall thereafter make payment of any amount allowed by the court in equal monthly installments prorated over the remaining months of the plan, or in such other amounts as the court may order. However, in the event that a creditor is granted relief from the automatic stay or the case is converted or dismissed, costs of collection, whether or not approved by the court, shall be collected in accordance with otherwise applicable law and not paid by the trustee pursuant to the procedure set forth above.

| | |
|---|---|
| F.<br>Priority | The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority: (1) trustee's authorized percentage fee; (2) priority claims of the debtor's attorney; (3) secured claims paid in fixed monthly installments (pro rata in the event of an insufficiency); (4) costs of collection on secured claims; (5) secured claims not paid in fixed installments; (6) priority claims other than those of the debtor's attorney; (7) specially classified nonpriority unsecured claims; and (8) general unsecured claims. |
| G.<br>Special terms | Notwithstanding anything to the contrary set forth above, this Plan shall include the provisions set forth in the box following the signatures. **The provisions will not be effective unless there is a check in the notice box preceding Section A.** |

H. Sum-mary of payments to and from the trustee

(1) Total payments from the debtor to the Chapter 13 trustee $ 40,193.45
(subject to Paragraph 2 of Section D)

(2) Estimated disbursements by the trustee for non-GUCs
(general unsecured claims):
    (a) Trustee's Fees $ 2,977.9
    (b) Priority payments to debtor's attorney $ 1165
    (c) Current mortgage payments $ -0-
    (d) Payments of mortgage arrears $ -0-
    (e) Payments of other allowed secured claims $ 22,111.16
    (f) Payments of non-attorney priority claims $ -0-
    (g) Payments of specially classified unsecured claims $ -0-
    (h) Total [add Lines 2a through 2g] $ 26,193.45

(3) Estimated payments available for GUCs and interest during $ 14,000
initial plan term [subtract Line 2h from Line 1]

(4) Estimated payments required after initial plan term:
    (a) Estimated total GUCs, including unsecured $ 50,608.42
    deficiency claims under § 506(a)
    (b) Minimum GUC payment percentage 27.5
    (c) Estimated minimum GUC payment [multiply line 4a $ 13,917.32
    by line 4b]
    (d) Estimated interest payments on unsecured claims $ 0
    (e) Total of GUC and interest payments [add Lines 4c $ 13,917.32
    and 4d]
    (f) Payments available during initial term [enter Line 3] $ 14,000.00
    (g) Additional payments required [subtract Line 4f from $ 82.68
    line 4e]

4

(5) Additional payments available:

    (a) Debtor's monthly payment less trustee's fees and    $_____
        current mortgage payments made by the trustee

    (b) Months in maximum plan term after initial term    _____

    (c) Payments available *[multiply line 5a by line 5b]*    $_____

**Sig-**
**natures:**    Debtor _V. Bcheijru._____ Date _04/05/04_

            Debtor _____ Date _____

            Debtor's Attorney _Jennifer Blanc Doyon_ Date _4 / 2 /04_

**Attorney**
**Information (name,**
**address, telephone,**
**etc.)**

---

**Special Terms** *[as provided in Paragraph G]*

Debtor will surrender a 2000 Honda Insight
which is subject to the secured claim of Turner
Acceptance Corporation

5

APPENDIX B




## SATISFACTION OF REAL ESTATE MORTGAGE – BY BANK

Loan # 6546548470

The undersigned Bank certifies that the following is fully paid and satisfied: Mortgage executed by **VALENTINA PICHUGIN, A SINGLE PERSON** to Bank and recorded in the office of the Register of Deeds of Cook County, as Document Number ████████ in (Reel/Vol.) N/A of (Records/Mortg's) on (Image/Page) N/A relating to property with an address of ███████████████████████████ and legally described as follows: **SEE ATTACHED EXHIBIT A**

Permanent Index No. ██████████

Today's Date 01/22/2010

**WELLS FARGO BANK, N.A.**

Name of Bank

By _Tina Glumbik_
    Tina Glumbik, VP Loan Documentation

COUNTERSIGNED:

By _Melissa M Kibler_
    Melissa M Kibler, VP Loan Documentation

Doc#: ████████ Fee: $40.25
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 02/08/2010 08:11 AM Pg: 1 of 2

Mail / Return to:
**VALENTINA PICHUGIN**
████████████

STATE OF MONTANA      }
COUNTY OF YELLOWSTONE  } ss.

On the above date, the foregoing instrument was acknowledged before me by the above named VP Loan Documentation.

_Rachel R Knapp_
Rachel R Knapp
Notary Public for the State of Montana
Residing at Billings, Montana
My Commission Expires: **04/01/2010**

This instrument was drafted by:
Tina Glumbik, Clerk
Wells Fargo Bank, N.A.
PO Box 31557, 2324 Overland Ave
Billings, MT 59102
866-255-9102



| | |
|---|---|
| S | yes |
| P | 2 |
| S | / |
| M | yes |
| SC | yes |
| E | NO |
| INT | h@ |

EXHIBIT A

Redacted

Redacted

<u>APPENDIX C</u>



**·Experian·**
A world of insight

Prepared for
VALENTINA PICHUGIN
**Report number**

Report date
June 29, 2010
www.experian.com/disputes    **Page 4 of 14**
P.O. Box 2002, Allen, TX 75013

**Potentially negative items or items for further review continued**

Redacted        Redacted

| | | | | | | |
|---|---|---|---|---|---|---|
| **WELLS FARGO BANK**<br>PO BOX 31557<br>BILLINGS MT 59107<br>(800) 245-8936<br>*Partial account number*<br>654654847.... | *Date opened*<br>Jun 2003<br>*Reported since*<br>- | *Date of status*<br>Dec 2009<br>*Last reported*<br>- | *Type*<br>Revolving<br>*Terms*<br>NA<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or*<br>*original amount*<br>NA<br>*High balance* | *Recent balance*<br>$0 /paid as<br>of - | Status: Discharged through Bankruptcy<br>Chapter 13.<br>Account history:<br>Debt included in Chapter 13<br>Bankruptcy on Dec 31, 2009<br>This account is scheduled to continue<br>on record until Sep 2015.<br>Comment: *"Account closed at consumer's*<br>*request."*<br>This item was verified and updated on<br>Jun 2010.<br>Address identification number: Not<br>available |

Redacted

| | | | | | | |
|---|---|---|---|---|---|---|
| **WELLS FARGO HOME**<br>**MORTGAGE**<br>8480 STAGECOACH CIR<br>FREDERICK MD 21701<br>*No phone number available*<br>*Partial account number*<br>70800....  | *Date opened*<br>Jun 2003<br>*Reported since*<br>Jul 2008 | *Date of status*<br>Apr 2004<br>*Last reported*<br>Jun 2010 | *Type*<br>Mortgage<br>*Terms*<br>2 Years<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or*<br>*original amount*<br>$123,750<br>*High balance*<br>NA | *Recent balance*<br>$0 /paid as<br>of Jun 2010 | Status: Discharged through Bankruptcy<br>Chapter 13.<br>Account history:<br>Debt included in Chapter 13<br>Bankruptcy on Apr 21, 2004<br>This account is scheduled to continue<br>on record until Apr 2011. |

Redacted

APPENDIX D



**WELLS FARGO**

HEQ Credit Disputes
PO Box 31557
MAC B6955-019

Billings, MT 59107

June 04, 2010

Valentina Pichugin



RE: Disputed Information on a Credit Report
     Wells Fargo Account # 654847

Dear Valentina Pichugin:

Your dispute regarding the accuracy of certain information reported by Wells Fargo to the credit-reporting agency has been investigated and a determination has been made. The result of our investigation establishes that the information we reported is accurate.

The account was not reaffirmed and was discharged in bankruptcy. The status of the account is paid and closed.

Please call us at 1-800-245-8936 Monday through Friday from 8 a.m. to 5 p.m., MT if we can be of further assistance. For TDD assistance, call 1-800-353-5565.

Sincerely,

Home Equity Collections Servicing
Support

ML

APPENDIX E

**Valentina Pichugin**



December 28, 2010

**CERTIFIED AND REGULAR MAIL**
Experian
PO Box 9554
Allen, TX 75013-9554

Re: Valentina Pichugin, SSN ▓▓▓▓▓▓

Experian Report #: ▓▓▓▓▓▓▓, dated December 28, 2010

To Whom It May Concern:

On April 21, 2004, I filed for Chapter 13 Bankruptcy. The bankruptcy was confirmed on June 16, 2004. I completed my Chapter 13 plan and received a Discharge of Chapter 13 on September 5, 2008. I have not filed any other bankruptcies. However, Experian has been reporting inaccurate information in my credit file, despite my repeated disputes of this information.

Demand is hereby made that you delete from any of my credit reports any reference to the following erroneous information:

• Wells Fargo Bank, partial account number 6546548478▓▓▓..., reported as "Discharged through Bankruptcy Chapter 13."
The loan was not discharged and it was not included in Chapter 13; it was paid outside the bankruptcy plan. See Exhibits A and B.

Please respond within 30 days and send me a corrected credit report showing correction of this item.

You are specifically requested to provide a copy of this letter to anyone asked to investigate this matter.

Sincerely,

Valentina Pichugin

Cc:
Wells Fargo Bank
P.O. Box 31557
Billings, MT 59107

<u>EXHIBIT A</u>

Experian - Potentially Negative Item Detail



## Experian
A world of insight

| Logout | Report Summary | Potentially Negative Items | Accounts in Good Standing | Requests for Your Credit History | Personal Information | Your Personal Statement | Get Credit Monitor | Get Credit Score |

## Potentially Negative Items or Items for Further Review

**?** What does potentially negative or items for further review mean?

**?** What if I think listed accounts are duplicates?

**?** What if I feel there is an error?

**Add Triple Alert℠ Credit Monitoring for only $4.95 per month!**

**Get the Score!** Add your Credit Score for only $7.95 **GET IT NOW!**

**Complete Identity Theft Protection is Here!**
- ✔ 3-Bureau Monitoring
- ✔ Email & Text Alerts
- ✔ Fraud Resolution

**TRY IT FREE**
with enrollment in ProtectMyID.com

Experian credit report prepared for
**VALENTINA PICHUGIN**
Your report number is

Report date: **December 28, 2010**

Credit Report Toolkit:
Print your report
Credit Education
Know your rights
Credit Fraud Center

### Item Detail

**WELLS FARGO BANK**

**Dispute this item >>**

**Address:**
PO BOX 31557
BILLINGS, MT 59107
*No phone number available*

**Account Number:**
654654847█.

**Address Identification Number:** Not Available

**Status:**
Discharged through Bankruptcy Chapter 13.

**Status Details:**
This account is scheduled to continue on record until Apr 2011.
This item was verified and updated on Aug 2010.

| | | |
|---|---|---|
| **Date Opened:** 06/2003 | **Type:** Revolving | **Credit Limit:** N/A |
| **Date of Status:** 04/2004 | **Terms:** N/A | **High Balance:** N/A |
| **Reported Since:** N/A | **Monthly Payment:** $0 | **Recent Balance:** N/A |
| **Last Reported Date:** N/A | **Responsibility:** Individual | **Recent Payment:** N/A |

**Account History:**
Debt included in Chapter 13 Bankruptcy on Apr 21, 2004

**Your Statement:**
NEVER LATE, ACCOUNT WAS PAID AS AGREED.
Account closed at consumer's request.

**Delete statement >>**

EXHIBIT B

Case 04-15665     Doc 4     Filed 04/21/04     Entered 04/22/04 15:50:58     Desc Main
Document     Page 1 of 5

E O D     APR 2 2 2004

Model Plan
Rev.02/13/04

Trustee:  ___ Marshall   ___ Meyer
          ___ Stearns     ___ Vaughn

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

In re:                          ) Case No. _04_ B _16665_
                                )
___ Pichugin, Valentina ,       )X Original Chapter 13 Plan
                                )
Debtors.                        )□ Modified Chapter 13 Plan, dated _____

X A check in this box indicates that the plan contains special provisions, set out in Section G. Otherwise, the plan includes no provisions deviating from the model plan adopted by the court at the time of the filing of this case.

**A. Budget Items**

1. As stated in the debtor's Schedule I and J , (a) the number of persons in the debtor's household is _____ ; (b) their ages are ████████████████ ; (c) total household monthly income is $████████ ; and (d) total monthly household expenses are $ 2,214.8  leaving monthly disposable income of $████████

2. The debtor's Schedule J includes $ _____ for charitable contributions; the debtor represents that the debtor made substantially similar contributions for _____ months prior to filing this case.

**B. General provisions**

1. The debtor assumes all unexpired leases and executory contracts identified in the debtor's Schedule G.

2. The rights of holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in Paragraph 4 of Section E of this plan, shall be modified only to the extent that (a) paying the amounts specified in that paragraph, while making all required postpetition principal, interest and escrow payments, shall result in full reinstatement of the mortgage according to its original terms, extinguishing any right of the mortgage holder to recover any amount alleged to have arisen prior to or during the pendency of the case, other than costs of collection, and (b) all costs of collection, including attorneys' fees, that arise during the pendency of this case may only be claimed by the mortgagee pursuant to the provisions of Paragraph 10 of Section E of this plan, and if not so claimed, are waived upon completion of this plan and may not be asserted thereafter.

3. The holder of any claim secured by property of the estate, other than a mortgage treated in Section C or in Paragraph 3 of Section E, shall retain the lien
   □ until receipt of all payments provided for by this plan on account of the claim, including payments on account of any unsecured portion of the claim, /or/
   X until receipt of all payments provided for by this plan on account of the portion of the claim that is its secured claim under 11 U.S.C. § 506(a),
   at which time the lien shall terminate and be released by the creditor.

4. Within 14 days of a request by the trustee, the debtor shall provide (a) copies of any tax returns filed during the pendency of this case, and (b) a copy of the debtor's current wage statement.

5. The debtor shall retain records, including all receipts, of all charitable donations listed in Schedule J.

**C. Direct payment of claims by debtor**

□ The debtor will make no direct payments to creditors holding prepetition claims. /or/
X The debtor will make current monthly payments, as listed in the debtor's Schedule J—increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements, collection costs, or similar matters—directly to the following creditors holding claims secured by a mortgage on the debtor's real property:

Creditor: _Wells Fargo_____ , monthly payment, $ _754.04_ ;
Creditor: _Wells Fargo_____ , monthly payment, $ _100.67_ .

*If this box is □ checked, additional direct mortgage payments are listed on the overflow page.*

**D.**
**Payments**
**by debtor**
**to the**
**trustee**

**1. Initial plan term.** The debtor will pay to the trustee $ 670 monthly for 60 months [and $ _____ monthly for an additional ‒‒ months], for total payments, during the initial plan term, of $ 40,193.45 *[Enter this amount on Line 1 of Section H.]*

**2. Adjustments to initial term.** (a) If the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments. (b) The plan will conclude, prior to the end of the initial term, at such time as all allowed claims are paid in full, with any interest required by the plan.

**E.**
**Disburse-**
**ments by**
**the**
**trustee**

The trustee shall disburse payments received from the debtor under this plan as follows:

**1. Trustee's fees.** Payable monthly, as authorized, estimated at 8 % of plan payments; and during the initial plan term, totaling $ 2977.27 *[Enter this amount on Line 2a of Section H.]*

**2. Priority claims of debtor's attorney.** Payable in amounts allowed by court order, in installments. Installment payments shall be made as follows, up to the allowed amount, unless lower installment payments are ordered by the court: an initial installment of one-half of the funds held by the trustee at the time the trustee receives the order allowing fees (not including amounts for current mortgage payments) and subsequent monthly installments of one-half of the regular monthly payment of the debtor (not including current mortgage payments). The total claim of debtor's attorney is estimated to be $ 1105 *[Enter this amount on Line 2b of Section H.]*

**3. Current mortgage payments.** Payable according to the terms of the mortgage, as set forth below, beginning with the first payment due after the filing of the case. Each of these payments shall be increased or decreased by the trustee as necessary to reflect changes in variable interest rates, escrow requirements, or similar matters; the trustee shall make the change in payments as soon as practicable after receipt of a notice of the change issued by the mortgage holder, but no later than 14 days after such receipt. The trustee shall notify the debtor of any such change at least 7 days before putting the change into effect.

(a) To creditor N/A _____, monthly payments of $_____.
These payments, over the term of the plan, are estimated to total $ _____.

(b) To creditor N/A _____, monthly payments of $_____.
These payments, over the term of the plan, are estimated to total $ _____.

If this box ☐ is checked, additional current mortgage payments are listed on the overflow page.
The total of all current mortgage payments to be made by the trustee under the plan is estimated to be $ N/A . *[Enter this amount on Line 2c of Section H.]*

**4. Mortgage arrears.** Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(a) To creditor N/A _____, arrears of $ _____, payable monthly
☐ pro rata with payments on secured claims /or/ ☐ in fixed installments of $ _____;
and payable ☐ without interest /or/ ☐ with interest at an annual percentage rate of _____%.
These arrearage payments, over the term of the plan, are estimated to total $_____.

(b) To creditor N/A _____, arrears of $_____, payable monthly

2

□pro rata with payments on secured claims /or/ □ in fixed installments of $ _____;
and payable □ without interest /or/ □ with interest at an annual percentage rate of _____%.
These arrearage payments, over the term of the plan, are estimated to total $_____.

If this box □ is checked, additional direct arrearage payments are listed on the overflow page.
The total of all mortgage arrearage payments to be made by the trustee under the plan is estimated
to be $_____*O*_____. [Enter this amount on Line 2d of Section H.]

5. *Other secured claims.* All secured claims, other than mortgage claims treated above, are to be paid in full during the
plan term, with interest at an annual percentage rate specified below in the amounts stated (subject to reduction either
with the consent of the creditor or by court order, implemented as for reductions of mortgage arrears), regardless of
contrary proofs of claim, in monthly installments, pro rata, but with fixed monthly payments if so specified (by a
check mark and payment amount):

(a) Creditor: _NISSAN_____  Collateral: _2004 NISSAN Sentra_
    Amount of secured claim: $ _17,000_ APR _10.8_ % □ Fixed monthly payment: $_____;
    Total estimated payments, including interest, on the claim: $ _22,111.16_.

(b) Creditor: _N/A_____  Collateral: _____
    Amount of secured claim: $_____ APR _____ % □ Fixed monthly payment: $_____;
    Total estimated payments, including interest, on the claim: $ _O_____.

If this box □ is checked, additional secured claims are listed on the overflow page. [All claims in the
debtor's Schedule D, other than mortgages treated above, must be listed in this paragraph.]

The total of all payments on these secured claims, including interest, is estimated to be $ _22,111.16_
[Enter this amount on Line 2e of Section H.]

6. *Allowed priority claims other than those of the debtor's attorney.* Payable in full, without interest, on a pro rata
basis. The total of all payments on non-attorney priority claims to be made by the trustee under the plan is
estimated to be $ _____O_____ . [Enter this amount on Line 2f of Section H.]

7. *Specially classified unsecured claims.* A special class consisting of the following non-priority unsecured claims:
_N/A_____ shall be paid at _____%
of the allowed amount. The total of all payments to this special class is estimated to be $_____O____.
[Enter this amount on Line 2g of Section H.]

Reason for the special class: _____.

8. *General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially classified,
including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro rata, □ in full, /or/ ☒ to the
extent possible from the payments set out in Section D, but not less than _27.5_ % of their allowed amount.
[Enter minimum payment percentage on Line 4b of Section H.]

9. *Interest.* Interest ☒ shall not be paid on unsecured claims /or / interest □ shall be paid on unsecured claims,
including priority and specially classified claims, at an annual percentage rate of ___O__ %. [Complete Line 4d of
Section H to reflect interest payable.]

10. *Costs of Collection.* For all claims treated under Paragraphs 3, 4, and 5 of this section, costs of collection,
including attorneys fees, arising during the pendency of this case, may only be collected by the creditor
through the following procedure, unless otherwise ordered by the court: (a) the costs must be itemized in a
notice, served within 90 days of the time the costs arose, on the trustee, the debtor, and the debtor's attorney;
(b) unless subject to an objection filed within 14 days after notice of the costs of collection is given, the costs

3

will be deemed allowed and approved as reasonable by the court; (c) the trustee shall commence making payments of the costs to the creditor, in the manner set forth below; (d) in the absence of objection, payments of the costs of collection shall be made with the regular monthly plan disbursements, commencing with the first disbursement taking place at least 21 days after notice of costs is given; (e) payments shall be in equal monthly amounts pro rated over the months remaining in the plan, unless the debtor agrees to larger monthly payments; (f) any party objecting to the payment of costs of collection must file and serve on the trustee, debtor, debtor's attorney and the creditor seeking payment, a written objection with a notice setting a hearing before the court within 14 days of filing; (g) upon receipt of objection, the trustee shall make no payment of the costs of collection until the objection is resolved by the court and shall thereafter make payment of any amount allowed by the court in equal monthly installments prorated over the remaining months of the plan, or in such other amounts as the court may order. However, in the event that a creditor is granted relief from the automatic stay or the case is converted or dismissed, costs of collection, whether or not approved by the court, shall be collected in accordance with otherwise applicable law and not paid by the trustee pursuant to the procedure set forth above.

**F. Priority**

The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority: (1) trustee's authorized percentage fee; (2) priority claims of the debtor's attorney; (3) secured claims paid in fixed monthly installments (pro rata in the event of an insufficiency); (4) costs of collection on secured claims; (5) secured claims not paid in fixed installments; (6) priority claims other than those of the debtor's attorney; (7) specially classified nonpriority unsecured claims; and (8) general unsecured claims.

**G. Special terms**

Notwithstanding anything to the contrary set forth above, this Plan shall include the provisions set forth in the box following the signatures. **The provisions will not be effective unless there is a check in the notice box preceding Section A.**

**H. Summary of payments to and from the trustee**

(1) Total payments from the debtor to the Chapter 13 trustee   $ _40,193.45_
   (subject to Paragraph 2 of Section D)

(2) Estimated disbursements by the trustee for non-GUCs (general unsecured creditors):
   (a) Trustee's Fees                                        $ _2,977.79_
   (b) Priority payments to debtor's attorney               $ _1105_
   (c) Current mortgage payments                            $ _-0-_
   (d) Payments of mortgage arrears                         $ _-0-_
   (e) Payments of other allowed secured claims             $ _22,114.46_
   (f) Payments of non-attorney priority claims             $ _-0-_
   (g) Payments of specially classified unsecured claims    $ _-0-_
   (h) Total [add Lines 2a through 2g]                      $ _26,193.45_

(3) Estimated payments available for GUCs and interest during initial plan term [subtract Line 2h from Line 1]   $ _14,000_

(4) Estimated payments required after initial plan term:
   (a) Estimated total GUCs, including unsecured deficiency claims under § 506(a)   $ _50,608.42_
   (b) Minimum GUC payment percentage                       _27.5_
   (c) Estimated minimum GUC payment [multiply line 4a by line 4b]   $ _13,917.32_
   (d) Estimated interest payments on unsecured claims      $ _0_
   (e) Total of GUC and interest payments [add Lines 4c and 4d]   $ _13,917.32_
   (f) Payments available during initial term [enter Line 3]   $ _14,000.00_
   (g) Additional payments required [subtract Line 4f from line 4e]   $ _82.68_

4

(5) Additional payments available:

    (a) Debtor's monthly payment less trustee's fees and
       current mortgage payments made by the trustee       $_____

    (b) Months in maximum plan term after initial term      _____

    (c) Payments available *[multiply line 5a by line 5b]*      $_____

**Sig-natures:**

Debtor _____ Date *04/05/04*

Debtor _____ Date _____

Debtor's Attorney _____ Date *4 / 2 /04*

**Attorney Information (name, address, telephone, etc.)**

---

**Special Terms** *[as provided in Paragraph G]*

Debtor will surrender a 2000 Honda Insight which is subject to the secured claim of Turner Acceptance Corporation

5

APPENDIX F



**WELLS FARGO**

HEQ Credit Disputes
PO Box 31557
MAC B6955-019

Billings, MT 59107

January 12, 2011

Valentina Pichugin



RE: Disputed Information on a Credit Report
    Wells Fargo Account # 654847█████

Dear Valentina Pichugin:

Your dispute regarding the accuracy of certain information reported by Wells Fargo to the credit-reporting agency has been investigated and a determination has been made. The result of our investigation establishes that the information we reported is accurate.

The account was not reaffirmed and was discharged in bankruptcy. The status of the account is paid and closed.

Please call us at 1-800-245-8936 Monday through Friday from 8 a.m. to 5 p.m., MT if we can be of further assistance. For TDD assistance, call 1-800-353-5565.

Sincerely,

Home Equity Collections Servicing Support

NRH

<u>APPENDIX G</u>



Your accounts that may be considered negative (continued)

1.

4.

| WELLS FARGO BANK<br>PO BOX 31557<br>BILLINGS MT 59107<br>No phone number available<br>Partial account number<br>654654847▓▓▓<br>Address identification number<br>▓▓▓▓▓ | Date opened<br>Jun 2003<br>First reported<br>Not reported<br>Date of status<br>Oct 2009 | Type<br>Revolving<br>Terms<br>Not reported<br>Monthly<br>payment<br>Not reported | Credit limit or<br>original amount<br>Not reported<br>High balance<br>Not reported | Recent balance<br>$0 /paid as of | Responsibility<br>Individual<br>Status<br>Discharged through Bankruptcy Chapter 13.<br>This account is scheduled to continue on record until Oct 2016.<br>Comment<br>Account closed at consumer's request.<br>Your statement<br>"NEVER LATE, ACCOUNT WAS PAID AS AGREED."<br>This item was verified and updated on Jan 2011.<br>Account History<br>Debt included in Chapter 13 Bankruptcy on Oct 16, 2009. |



APPENDIX H



HEQ Credit Disputes
PO Box 31557
MAC B6955-019

Billings, MT 59107

February 01, 2011

Valentina Pichugin



RE: Disputed Information on a Credit Report
    Wells Fargo Account # 654847███████

Dear Valentina Pichugin:

Your dispute regarding the accuracy of certain information reported by Wells Fargo to the credit-reporting agency has been investigated and a determination has been made. The result of our investigation establishes that the information we reported is accurate.

The account is reporting paid/closed with a zero balance, however due to the bankruptcy the credit bureaus will exclude some account details.

Please call us at 1-800-245-8936 Monday through Friday from 8 a.m. to 5 p.m., MT if we can be of further assistance. For TDD assistance, call 1-800-353-5565.

Sincerely,

Home Equity Collections Servicing Support

NRH